905 F.2d 1532
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Westley JACKSON, a/k/a Terrance Alonzo Benthall, a/k/a
Christopher Royal, Defendant-Appellant.
 No. 89-5442.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 24, 1990.
Decided May 9, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CR-88-408-JFM).
 Warren A. Brown, Baltimore, Md., for appellant.
 Breckinridge L. Willcox, United States Attorney, Billy S. Bradley, Assistant United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before K.K. HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 * Westley Martin Jackson pled guilty to attempted murder of an officer of the United States and to using a firearm during the commission of a crime in violation of 18 U.S.C. Sec. 1114 and 18 U.S.C. Sec. 924(c), respectively. At sentencing, the district court sentenced Jackson to a term of imprisonment of fifteen years for both offenses, considered an upward departure under the United States Sentencing Guidelines from the applicable range of eleven years. Jackson appeals, alleging that the district court incorrectly applied the Guidelines. Finding that the upward departure was reasonable and that the district judge articulated the reasons for imposition of a sentence different from that prescribed by the Guidelines, we affirm.
 
 II
 
 2
 Pursuant to the plea agreement the parties stipulated to the following facts:
 
 
 3
 On October 12, 1988, the Honorable Kathleen A. Roberts, United States Magistrate, Southern District of New York, issued a warrant for the arrest of Westley Jackson on charges of unlawful flight to avoid confinement in violation of 18 U.S.C. Sec. 1073.
 
 
 4
 On October 24, 1988, the Federal Bureau of Investigation (FBI) Office in Baltimore received a request from the FBI in New York for assistance in a fugitive investigation. The following information was provided:
 
 
 5
 On September 28, 1981, Westley Jackson, a black male, date of birth January 14, 1964, was convicted of manslaughter in the first degree and criminal possession of weapons in the third degree in the State of New York. On March 28, 1986, Jackson was placed on parole. In May, 1987, Jackson violated his parole status. On October 12, 1988, an unlawful flight to avoid confinement warrant was issued by United States Magistrate Kathleen A. Roberts, Southern District of New York.
 
 
 6
 A copy of the warrant was enclosed for use by FBI Baltimore. Investigation by FBI Baltimore revealed that Westley Jackson had been seen in a 1988 black Oldsmobile, Maryland license No. VYJ-366. Upon further investigation, FBI Baltimore received information that Westley Jackson might be living with a black female named Arabia Matthews who resided at 6605 English Oak Road, Apartment F. On November 9, 1988, Baltimore FBI agents located a black Oldsmobile, Maryland registration VYJ-366, in the parking lot in front of the apartment building at 6605 English Oak Road, Baltimore, Maryland.
 
 
 7
 On November 9, 1988, at approximately 12:20 p.m., Special Agents Samuel M. Wichner, Gerald R. Dougher, Jr., and Joseph M. O'Hara knocked on the door of Apartment F at 6605 English Oak Road, Baltimore, Maryland. After what FBI agents described as a substantial period of time, a black female came to the door of Apartment F. The woman identified herself as Arabia Matthews, and she was asked to step outside of the apartment by the agents. Ms. Matthews was asked whether she knew Westley Jackson. Ms. Matthews stated that she did not know Westley Jackson.
 
 
 8
 Ms. Matthews was informed by Special Agent Wichner that Westley Jackson was a federal fugitive. Special Agent O'Hara then displayed a photograph of Westley Jackson which Ms. Matthews said she did not recognize. The agents asked Ms. Matthews whether there were any other persons in her apartment and she denied that there were. The agents asked her the question several times and each time she denied that there was anyone else in the apartment. The agents then requested permission to search Ms. Matthews' residence. Ms. Matthews agreed to permit the search. Shortly after entering Apartment F, Special Agent Wichner saw a pair of men's high top tennis shoes. Special Agent Wichner then heard a noise that sounded like window blinds hitting a window coming from the rear bedroom in the apartment.
 
 
 9
 On November 9, 1988, Special Agents Gregory G. Tessier and John G. Benedictis were assigned to provide security at the rear of Apartment F, 6605 English Oak Road, Baltimore, Maryland. From his position Special Agent Tessier could see the rear of the second floor apartment, designated Apartment F, and he saw a black male, wearing black clothing, jump out of the second floor window. This individual was holding an object in his hands when he jumped from the window. The object was later identified as a 12-gauge Mossberg Model 590 shotgun which was dropped as the individual hit the ground. Special Agent Tessier identified himself and ordered the black male to halt. The individual began to run with Special Agent Tessier in pursuit. The individual stopped, turned, and fired a handgun at Special Agent Tessier. Special Agent Tessier took cover and returned fire. The individual continued running.
 
 
 10
 Special Agent John G. Benedictis saw Special Agent Gregory Tessier running as if he were in pursuit of an individual. Special Agent Benedictis saw the black male running away from 6605 English Oak Road and heard what he believed to be the sound of two gunshots. Special Agent Benedictis then began to pursue the individual in his vehicle in an attempt to cut off his route of escape. Approximately 100 feet from the apartment, Jackson stopped running, positioned himself behind a dark colored van, turned, and at a distance of approximately 10-15 feet, pointed his gun at Special Agent Benedictis and fired at least two rounds at him. One of the rounds shattered the driver's side window, entered Special Agent Benedictis' suitcoat, passed through his FBI credentials, and lodged in the doorpost support of the vehicle. The individual then continued running.
 
 
 11
 By this time Special Agents Wichner, Dougher and O'Hara had left Apartment F and begun to pursue the individual on foot. Subsequently, Special Agents O'Hara and Dougher cornered the individual and arrested him in the rear of an apartment building with the address 6615 English Oak Road. At the time of the individual's arrest, he had in his possession four handguns: (1) a .45 semi-automatic pistol loaded and cocked; (2) a .38 caliber Colt revolver, loaded; and (3) two 9 mm. semi-automatic pistols with fully loaded magazines.
 
 
 12
 A search of the individual incident to the arrest produced two Maryland driver's licenses. One license identified the individual as Terrance Alonzo Benthal, and a second driver's license identified him as Christopher Royal; however, the photograph received from the FBI New York and subsequent confirming fingerprint identification clearly identified the individual as Westley Jackson. The Westley Jackson sought in the warrant and the individual arrested were identified as one and the same.
 
 
 13
 A search of the area where Jackson had run uncovered a canvas pouch with two loaded semi-automatic pistol magazines inside and a holster near the southwest corner of the building addressed 6617 English Oak Road. In addition, a 9 mm. Ruger revolver and a number of spent shell casings near the scene where Special Agent Benedictis had been fired upon were found.
 
 
 14
 Thereafter, also on November 9, 1988, Arabia Matthews agreed to permit the FBI to search her apartment. Matthews indicated that Jackson resided with her in one bedroom of the apartment and she resided in the other bedroom. A subsequent search of the bedroom identified as Jackson's uncovered the following: (a) a loaded Ruger .22 caliber rifle; (b) a Tarus Brazil .357 caliber magnum revolver; (c) a loaded EXCAM .38 caliber Derringer; (d) a shoe box with ammunition, including 9mm., .45 caliber, .38 caliber, .357 caliber, .38 special + p, .32 caliber and 12 gauge shotgun; (e) a small mirror with white powder residue and a white canister containing a white powder; (f) a locked steel safe, beige in color; and (g) several photographs. The photographs showed Jackson with various pistols, with a stack of U.S. currency and sitting inside the hatchback of a dark colored Oldsmobile, Maryland license VYJ-36__. Another photograph showed two derringers, six revolvers, four semi-automatic pistols, a rifle and a shotgun spread on a sheet with the same pattern as that in Jackson's bedroom. A search of the other bedroom claimed to be occupied by Matthews produced a notebook with the name Westley M. Jackson and Christopher Royal written on at least one of the pages.
 
 
 15
 The entire apartment was searched. A derringer was recovered in the bathroom tissue bin. Several mirrors with white powder on them, an Ohaus triple beam scale, and a brown zipper type bag containing two measuring spoons with white powder residue and two clear plastic bags containing white powder were recovered, among other items. An analysis by the Drug Enforcement Administration laboratory revealed that the white powder in the two clear plastic bags was 38.4 grams of 56% pure heroin.
 
 
 16
 Jackson has prior convictions for manslaughter and possession of a loaded weapon in the State of New York.
 
 III
 
 17
 The district court's authority to depart from the applicable Guideline range is found at 18 U.S.C. Sec. 3553(b). If there exists an aggravating circumstance of a kind, or to a degree, not adequately considered by the Sentencing Commission the court must state the specific reasons for the imposition of a sentence differing from that prescribed by the Guidelines, 18 U.S.C. Sec. 3553(c). United States v. DeLuna-Trujillo, 868 F.2d 122, 124 (5th Cir.1989).
 
 
 18
 The district judge determined that Jackson's criminal history category failed adequately to reflect the seriousness of his conduct. U.S.S.G. Sec. 4A1.3. The court identified two prior offenses that were counted as only one for Guideline purposes. The trial judge also noted that Jackson's prior handgun possession charge stemmed from an assault. In reaching the conclusion that Jackson's criminal history was not adequately reflected, the court accepted the investigation of the prosecution and the FBI regarding Jackson's offenses in New York. Appellant questions the court's factual findings concerning the New York offenses. The court's factual determination, however, must be upheld unless clearly erroneous, which we find it is not. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 19
 Consistent with the requirements of 18 U.S.C. Sec. 3553(c), the court provided its specific reasons for departing from the Guidelines. The district judge expressed a general concern over a criminal history category which inadequately reflected Jackson's past criminal conduct and found the prior offenses and conduct to be specific reasons for the departure. Additionally the court questioned whether even the fifteen years ultimately imposed was adequate to protect society.
 
 
 20
 The Guidelines specifically provide for departure when a dangerous weapon is used in a manner in which it endangers others. Sentences may be substantially increased if the offense involved the discharge of a firearm. U.S.S.G. Sec. 5K2.6. As Jackson discharged the weapon in order to conceal the commission of another offense (possession of narcotics), further justification for departure is warranted under U.S.S.G. Sec. 5K2.9.
 
 
 21
 In addition we note that the district judge postponed imposition of a sentence in order more carefully to study the Guidelines and to ensure that the parties had a fair opportunity to address the sentencing issues, specifically the possibility of an upward departure. Under those facts, we find no unreasonable exercise of the district courts's sentencing authority.
 
 
 22
 We have determined that the briefs and record were sufficient and have granted appellant's motion to decide the case without oral argument. The sentence imposed by the district court is accordingly
 
 
 23
 AFFIRMED.