**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth Wayne DAUGHTREY, a/k/a**
**Kenneth Wayne Daughtry,**
**Defendant–Appellant.**

**No. 88–5151.**

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1989.

Decided May 11, 1989.

---

Calvin Richard Depew, Jr. (Rabinowitz, Rafal, Swartz & Gilbert, P.C., Norfolk, Va., on brief), for defendant-appellant.

Harvey Lee Bryant, III, Asst. U.S. Atty., Norfolk, Va. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before HALL, PHILLIPS and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Kenneth Wayne Daughtrey appeals the sentence imposed after he entered a plea of guilty to passing counterfeit bills in violation of 18 U.S.C.A. § 472 (West 1976). Since the offenses were committed after November 1, 1987, the sentence was governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989). Among other things, this Act authorized the creation of the United States Sentencing Commission, charged with promulgating sentencing guidelines for most federal courts. 18 U.S.C.A. § 3551(a). This appeal presents the issue of whether Kenneth should have been sentenced as a minimal or minor participant under Guideline § 3B1.2. The district court determined that he was neither and sentenced him as a participant. Since the issue involves an application of the guidelines to the facts, we review applying the due deference standard set forth in 18 U.S.C.A. § 3742(e). We affirm.

## I.

The uncontradicted facts demonstrate that during the last week in March 1988 Alan Daughtrey, Kenneth's brother, purchased fifty counterfeit $20 bills for the sum of $400, which he passed at business establishments in several cities. On April 8 Alan purchased an additional fifty counterfeit $20 bills and passed them at various locations. Again, on April 10 he purchased $3,000 in counterfeit bills and passed a number of them during the next few days. On April 17 Alan, concerned that the police might be on the lookout for his vehicle, contacted Kenneth about participating in this activity. Kenneth agreed to assist and Alan agreed to pay him $100 for each trip they made to various stores and shopping centers. On that day the brothers traveled in Kenneth's vehicle to Roanoke Rapids, North Carolina, where they passed a total of fifty counterfeit bills. Alan paid Kenneth $100 for his efforts. The next day they traveled to Greenville, North Carolina, where they again passed fifty counterfeit bills, and Alan once again paid Kenneth $100. On each trip Alan and Kenneth separately entered various stores and each passed counterfeit bills.

On April 22 Alan secured an additional $3,500 in counterfeit $20 bills. During the next several days he and Kenneth traveled to various cities and passed approximately $2,000 in counterfeit bills. Kenneth was paid $100 for each trip. On April 25, now under surveillance by Secret Service agents, they traveled to the Greenbriar Shopping Mall in Chesapeake, Virginia where they divided the remaining counterfeit bills between them and entered the mall. Kenneth was observed passing counterfeit bills in three stores and Alan in three others before they were arrested. A search revealed that each was personally in possession of both counterfeit and legitimate bills.

Kenneth pled guilty to a one-count indictment charging him with passing three counterfeit $20 bills in violation of section 472. Properly applying Guideline § 1B1.3 (Relevant Conduct), the district court calculated Kenneth's sentence based on the passing of the three counterfeit bills for which he was indicted, as well as those passed by Alan and Kenneth from April 17 until their arrest. The calculation did not include Alan's acts of misconduct committed prior to April 17. Under Guideline § 2B5.1(a) (Offenses Involving Counterfeit Obligations of the United States), Kenneth's base offense level was 9. Pursuant to Guideline § 2B5.1(b)(1) one additional level was added for passing more than $2,000 but not more than $5,000 in counterfeit bills, totaling a base offense level of 10. The district court then reduced the offense level by 2 pursuant to Guideline § 3E1.1, finding that Kenneth had accepted responsibility for his acts. Thus his net offense level was 8. Finally, after determining that Kenneth's criminal history category was IV, the district judge sentenced him to 16 months incarceration, a sentence which was within the appropriate guideline range.

At the sentencing hearing Kenneth argued that he was entitled to an offense level reduction of 4 for having been only a minimal participant in the criminal activity; alternatively, he sought a 2–level reduction claiming to have been a minor participant. Guideline §§ 3B1.2(a), (b). The government, while objecting to a 4–level minimal participant reduction, concurred that a 2–level minor participant reduction was warranted. Both parties asserted that Kenneth was not as culpable as Alan because the scheme was Alan's idea and he supplied the counterfeit bills, and because Kenneth did not receive a full share of the illegal proceeds. The probation officer who prepared the presentence investigation did not recommend that Kenneth receive an offense level reduction under either the minor or minimal participant provision. The district judge rejected both the defendant's and government's recommendations and sentenced Kenneth as a participant,[1] stating that he did not "feel that you can

---

**1.** In this context, participant means anyone to whom Guideline § 3B1.1 (Aggravating Role) or Guideline § 3B1.2 (Mitigating Role) does not apply.

consider [Daughtrey's participation] a minor role or a minimal role."

## II.

Assessing the relative culpability of each defendant engaged in a concerted course of criminal activity is a long recognized legitimate endeavor. Since many offenses are defined in general terms and encompass a variety of conduct, a judge should be able to make a distinction at sentencing between individuals who violated the same statute but nevertheless participated in the crime in ways so different that significant degrees of culpability exist.

Congress recognized this legitimate need to distinguish between significant levels of criminal culpability. It specifically directed the Sentencing Commission, "in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences [to take] into account only to the extent ... relevan[t] [a defendant's] ... role in the offense." 28 U.S.C.A. § 994(d)(9) (West Supp.1988).

Pursuant to this congressional directive the Sentencing Commission promulgated Guideline §§ 3B1.1. and 3B1.2 (Role in the Offense) which provide offense level adjustments for aggravating and mitigating roles in offenses committed by more than one participant.[2] The Introductory Commentary to these guidelines states: "When an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." Guideline § 3B, Introductory Commentary. Thus, a district court's application of these guidelines begins with the understanding that the participation by more than one individual in a course of criminal misconduct does not necessarily mean that one will be considered more or less culpable than another for Role in the Offense purposes. This premise is reinforced by Guideline § 3B1.4 and its Commentary, which state:

§ 3B1.4. In any other case, no adjustment is made for role in the offense.

2. A third guideline section, § 3B1.3, addresses an abuse of position of trust or use of a special

*Commentary*

Many offenses are committed by a single individual or by individuals of roughly equal culpability so that none of them will receive an adjustment under this Part. In addition, some participants in a criminal organization may receive increases under § 3B1.1 (Role in the Offense) while others receive decreases under § 3B1.2 (Role in the Offense) and still other participants receive no adjustment.

■ Multiple participants in the same offense may be found to have the same or different levels of culpability depending on the particular circumstances of the case. Whether Role in the Offense adjustments are warranted is to be determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, *see* Guideline § 1B1.3, but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction. *See United States v. Mora–Estrada*, 867 F.2d 213, 216 (5th Cir.1989); *United States v. Buenrostro*, 868 F.2d 135 (5th Cir.1989). The sentencing judge's knowledge of previous cases will likely aid in the final determination of whether, against this objective standard, a defendant's degree of participation in the offense warrants a Role in the Offense adjustment.

■ Thus, where three individuals participate in the commission of an offense, all three, for purposes of Role in the Offense adjustments, may properly be sentenced as participants, none of the three receiving an upward or downward offense level adjustment. For example, if three individuals had entered a bank with the intent to commit robbery and one stood guard at the door, another sprayed paint on the camera, and the third gathered the money from a teller's cage, no adjustment for Role in the Offense would be warranted. Even if one of the participants deserved an aggravat-

skill, neither of which is relevant in this case.

ing adjustment because of other acts he committed, the other participants would not be entitled to minimal or minor Role in the Offense adjustments.

### III.

Review of a district court's determination to make a Role in the Offense adjustment is governed by section 3742(e), which provides:

(e) **Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous *and shall give due deference to the district court's application of the guidelines to the facts.*

(Emphasis added.)

■■■ The legislative history surrounding the adoption of the "due deference" standard of review is most instructive:

This standard is intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a district court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely.

134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988) (section by section analysis of provisions enacted at Title VII, subtitles B and C, Anti–Drug Abuse Act of 1988, Pub.L. 100–690 (Nov. 18, 1988)). The amount of deference due a sentencing judge's application of the guidelines to the facts thus depends on the circumstances of the case. If the issue turns primarily on a factual determination, an appellate court should apply the "clearly erroneous" standard. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). If the issue, for example, turns primarily on the legal interpretation of a guideline term, which of several offense conduct guidelines most appropriately apply to the facts as found,[3] or the application of the grouping principles, *see* Guideline §§ 3D1.1, *et seq.,* the standard moves closer to *de novo* review. The due deference standard is, then, the standard courts have long employed when reviewing mixed questions of fact and law. On mixed questions, courts have not defined any bright-line standard of review. Rather, the standard of review applied varies with the "mix" of the mixed question. If the question:

[I]s 'essentially factual,' ... the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the ques-

---

**3.** If a defendant pleads guilty to an indictment charging a violation of 18 U.S.C.A. § 666(a) (West Supp.1989), the sentencing judge would have to determine whether Guideline § 2B1.1, 2C1.1, 2C1.2, or 2F1.1 most appropriately applies.

tion should be classified as one of law and reviewed de novo.

*United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (*en banc*) (citations omitted), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

This construction of the due deference standard is consistent with the standards for appellate review of other guideline issues. Sections 3742(e)(1) and (e)(2) clearly call for a *de novo* review when the appellate court is addressing purely legal issues. Subsection (e)(2) also encompasses the review of the "correctness" of a district court decision applying the guidelines to the facts of a particular case. Here, the standard of review will depend on the nature of the issue presented.

In order to fully appreciate the need for the due deference standard to be a flexible one, it is helpful to compare it to the standard of review for departures. Section 3742(e)(3) addresses review of sentences imposed outside of guideline ranges (departures) and provides for appellate review under a reasonableness standard. Congress has supplied specific statutory criteria in 18 U.S.C.A. §§ 3553(a) and (b) to structure departure decisions. These criteria, in turn, have been effectively incorporated into the appellate review provisions pertinent to departures at section 3742(e)(3). Since appellate review is to be guided by considerations identical to those employed by the district court, an appellate court must fashion a more carefully tailored scrutiny of the reasonableness of a departure decision than might be suggested by the bare statutory term "unreasonable" standing alone, which some administrative law commentators have associated with a substantial evidence test. *See, e.g.,* Davis, *Administrative Law,* 75–78 (1977).

■ Like the due deference standard for reviewing guideline application issues, the reasonableness standard for reviewing departures should not be viewed as a fixed point within the scope-of-review spectrum; rather, it too is a sliding scale, with the appropriate point depending on the particular aspect of the departure decision issue being reviewed. The level of review that reasonableness requires will depend on whether the issue is (1) the correctness of the factual findings underlying the decision to depart, (2) the relevance of the factor for sentencing purposes which was used to justify a departure, (3) the adequacy of the Commission's consideration of the factor in formulating the guidelines, or (4) the propriety of the extent of the departure.

Underlying the Sentencing Reform Act are the goals of consistency and similarity in sentencing. The findings of a judge applying the guidelines and sentencing within the appropriate range should not be subject to a standard of review that may provide an incentive to depart. Such a consequence would run counter to the expressed intent of the Sentencing Reform Act and reintroduce unwarranted disparity in sentencing practices.

### IV.

■ No legal interpretation of a guideline term is needed in this case, nor is there any debate about which offense conduct guideline in Chapter 2 applies. Rather, the issue turns on the correctness of the district court's determination that Kenneth was neither a minimal nor a minor participant in the criminal activity. Since this is an "essentially factual" question, the due deference standard requires that we affirm the district court's decision unless clearly erroneous. *See United States v. Mejia-Orosco,* 867 F.2d 216, 220–21 (5th Cir.1989); *Buenrostro,* 868 F.2d at 138.

In a case which turns on an ultimate factual determination such as whether a defendant's role in the offense was minimal or minor for purposes of Guideline § 3B1.2, a review of the underlying facts advanced to support the application of this guideline may aid the appellate court in its review. Often, while facts may be present which arguably distinguish one participant from another, the distinguishing facts will not be relevant for sentencing purposes.

Here, beginning on April 17 and continuing until their arrest, Alan and Kenneth both participated and acted in concert in the passing of numerous counterfeit bills.

As far as the actual commission of the criminal acts proscribed by section 472, each acted in a similar fashion. However, Kenneth argues that there are three reasons which compel a finding that he qualifies for a minimal or minor Role in the Offense adjustment. First, he argues that it was his brother's idea to pass the counterfeit bills; second, that only his brother had contact with the supplier; and third, that he did not receive an equal share of the illegal proceeds. Although all three of these underlying facts are true, they were properly rejected by the district court since they were irrelevant for sentencing purposes.

When a deliberate act of misconduct is committed by two or more participants, one will almost always have conceived the idea first. Being told of a criminal scheme does not assign a minimal or minor role to those who fully implement it, as did Kenneth who knowingly engaged in passing counterfeit bills on many occasions. Also, in cases where fungible items such as counterfeit bills or drugs are involved, frequently only one participant will have access to the source. While the one having access to the source may prove to be more involved in criminal activity, it does not require a minimal or minor Role in the Offense be assigned to those who fully participate in the distribution end of the scheme.

Finally, under some circumstances it is conceivable that the percentage of proceeds individually received from illegal activity committed by more than one participant may provide an indicant for a Role in the Offense application. Here, however, the division of proceeds represents only an agreement between two brothers as to how the spoils of the illegal activity were to be divided. Their agreement had nothing to do with the criminal conduct of either. The district court properly focused not on the division of illegal proceeds but on the relevant conduct of the defendant.

Accordingly, since the district court determination was essentially a factual one, due deference compels a review under the clearly erroneous standard. Applying this standard, we hold that the district court

decision that Kenneth was not entitled to a Role in the Offense adjustment under Guideline § 3B1.2 was not clearly erroneous.

AFFIRMED.