**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 98-4131

JOHN GEORGE HORTON,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-97-15)

Submitted: September 22, 1998

Decided: October 26, 1998

Before NIEMEYER, HAMILTON, and WILLIAMS,
Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Stephen V. Groh, Hagerstown, Maryland, for Appellant. William D.
Wilmoth, United States Attorney, Sherry L. Muncy, Assistant United
States Attorney, Elkins, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John George Horton appeals the 60-month sentence of imprisonment he received after he pled guilty to possession of a firearm while a convicted felon, 18 U.S.C.A. § 922(g)(1) (West Supp. 1998). He contends that he was entitled to notice of certain evidence that the government presented at sentencing, that certain hearsay evidence was improperly considered, that the court erred in departing upward pursuant to USSG § 4A1.3, p.s.,[1] and that the court clearly erred in finding that he had not possessed the weapon solely for lawful sporting purposes. See USSG § 2K2.1(b)(2). We affirm the sentence in part, vacate in part, and remand for resentencing.

In December 1993, John Horton, a convicted felon, was stopped during the late evening for a traffic violation. Visibly protruding from behind the seat in Horton's truck was the stock of a loaded SKS rifle equipped with a bayonet, a hunting scope, and a sling with the name "Johnny" on it. Horton had purchased the rifle in October 1993 using his mother's driver's license as identification. In the same month, he purchased a shotgun by falsely stating that he had not been convicted of a felony. Based on this conduct, Horton was charged several years later with two counts of making false statements in connection with the acquisition of a firearm (Counts One and Two) and with possession of the SKS rifle (Count Three). He pled guilty to Count Three.

Horton's sentencing was conducted in three hearings. At issue was his assertion that he bought both firearms solely for hunting, as well as the probation officer's suggestion that an upward departure might

_____

[1] **U.S. Sentencing Guidelines Manual** (1997). Horton was sentenced in January 1998. The 1993 Guideline Manual was used in the presentence report. However, the district court appears to have held that the 1997 guidelines applied.

2

be appropriate because criminal history category VI--the highest category--under-represented Horton's past criminal record. At the first hearing, Horton denied that the rifle was loaded and testified that he was on his way to a hunting camp when he was stopped. Horton's mother, sister, and nephew all gave testimony supporting his statement that he acquired the weapons solely for hunting. At the second hearing, the government presented testimony from former Chief Sheriff's Deputy Russell Colebank, one of the arresting officers. Colebank testified that when he retrieved the rifle from Horton's truck, it was loaded. Also testifying was Donald Rotruck, an officer who had stopped Horton for a traffic violation in 1987. Rotruck testified that, after Horton failed several sobriety tests, he fled. Rotruck pursued and caught up with Horton. Rotruck testified that, in the struggle which followed, Horton took his Mace and sprayed him with his own Mace and then took his gun, which discharged into the ground as Rotruck grabbed for it. As a result of this incident, Horton pled guilty to attempted malicious assault.

At the final hearing, the district court determined that the lawful sporting use reduction did not apply and that Horton's twenty-four criminal history points warranted an upward departure. The court structured the departure by increasing the offense level from 12 to 17, with a resulting guideline range of 51-63 months. The court imposed a sentence of sixty months.

Horton first argues that he was entitled to prior notice that the government would call Rotruck as a witness because the district court departed upward based in part on Rotruck's testimony that Horton had discharged a firearm while resisting a police officer in 1987. He relies on Burns v. United States, 501 U.S. 129 (1991) (holding that a defendant must have reasonable notice that a departure will be considered and on what grounds), and on Fed. R. Crim. P. 32(b)(6) (requiring parties to file objections one month before sentencing). This argument is without merit. The presentence report gave Horton notice of a possible departure under USSG § 4A1.3. Burns does not require that the defendant have notice of all evidence that may be presented at sentencing. Moreover, the government attorney called Rotruck to rebut Horton's testimony that he possessed the rifle solely for lawful purposes by showing that in the past Horton had demon-

3

strated a willingness to use a firearm violently. **2** Even though the district court referred to Rotruck's testimony in explaining the basis for its departure, Horton was not entitled to prior notice that Rotruck would be called as a witness, and the district court did not err in permitting him to testify.

Next, Horton argues that the district court erred in permitting Colebank to testify that an informant provided information to police about a month before Horton's 1993 arrest that Horton was carrying a rifle in his truck. Colebank appears to have mentioned the informant only to explain why he went to the scene of the traffic stop. Under cross-examination, Colebank could only identify the informant as a resident of the trailer park where Horton was living at the time. Horton objected generally to the introduction of hearsay, but did not specifically challenge the reliability of the informant.

On appeal, Horton contends that the hearsay evidence was damaging because the district court cited the fact that Horton had been carrying the rifle in his truck during the month before deer season opened in the course of finding that he had not possessed the rifle solely for lawful sporting purposes. Horton argued that the hearsay evidence lacked sufficient indicia of reliability to be considered. Horton is correct that hearsay may be considered at sentencing only if it "has sufficient indicia of reliability to support its probable accuracy." See USSG § 6A1.3(a); see also United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991). However, because Horton did not challenge the informant's reliability in the district court, the plain error standard of review applies. See United States v. Olano, 507 U.S. 725, 732 (1993) (appellant must show that error occurred, that error was plain, prejudiced him, and must be corrected to preserve fairness, integrity, and public reputation of judicial proceedings). We find that the district court did not commit plain error in permitting Colebank to testify about the information he received from the informant. The district

---

**2** The government evidently believed that Rotruck's testimony was necessary because the assault was described in detail in the presentence report, but the report also noted that Horton denied touching the officer's weapon and said he fled because he was afraid Rotruck was about to shoot him.

4

court denied the reduction primarily because it did not find credible Horton's testimony that he obtained the rifle solely for hunting.

Horton also contends that the district court failed adequately to explain its criminal history departure under the analysis set out in United States v. Rybicki, 96 F.3d 754, 757-58 (4th Cir. 1996) (following Koon v. United States, 518 U.S. 81, 96-100 (1996)). Horton claims that his offense was typical of § 922(g) offenses and that his criminal history was not under-represented because he had only two prior felonies and neither of his felony convictions involved injury to a victim.[3]

Horton had twenty-four criminal history points. Category VI only accounted for thirteen points. The guidelines encourage departure when the defendant's criminal history category does not reflect the seriousness of his record. See USSG § 4A1.3. Therefore, we find that the district court did not abuse its discretion in deciding that a departure was warranted based on the inadequacy of Horton's criminal history category. See Rybicki, 96 F.3d at 757-58 (encouraged factor may be basis for departure unless adequately taken into account by guideline; decision to depart reviewed for abuse of discretion). We have approved in principle departures above category VI; such a departure may be structured by moving to higher offense levels, as the district court did here. See United States v. Cash, 983 F.2d 558, 561 n.6 (4th Cir. 1992).

However, in this case the district court did not give any explanation for the extent of the departure. Under Cash, 983 F.2d at 561, and United States v. Rusher, 966 F.2d 868, 884 (4th Cir. 1992), when the sentencing court departs upward for an inadequate criminal history category, it must make a finding that the next higher category or offense level is also inadequate before moving to a still higher one. Because the district court did not comply with Cash and Rusher, we are constrained to vacate the sentence in part and remand for the limited purpose of allowing the court to explain its reason for departing from offense level 12 to level 17.

_____

[3] Horton had a prior conviction for battery involving injury to a fellow inmate while he was incarcerated in 1995.

5

Finally, Horton contends that the district court clearly erred in finding that he did not possess the rifle solely for hunting. He points out that he and his family testified to that effect, and that the rifle had a hunting scope on it, that he had only eight rounds of ammunition, that he possessed the weapon for only six weeks, that he was arrested the night before antler deer season opened, and that he did not use the weapon to commit a crime. However, the district court did not find Horton's testimony or that of his family members credible. A fact-finder's credibility determination is not reviewable on appeal. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Given the court's finding that Horton's assertion that he possessed the rifle solely for hunting was not credible, its decision to deny him the "lawful sporting purposes" reduction was not clearly erroneous.

Accordingly, we affirm the sentence in part but vacate the sentence and remand for further proceedings. On remand, if the district court again determines that a departure from offense level 12 to level 17 is appropriate, it should explain its reasons for departing to that extent. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

6