**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 99-4929

ELIZABETH RAY TRANTHAM,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 99-4945

RYAN NEIL TRANTHAM,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-98-371)

Submitted: May 31, 2000

Decided: June 16, 2000

Before MURNAGHAN and KING, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

No. 99-4929 affirmed and No. 99-4945 affirmed in part and dismissed
in part by unpublished per curiam opinion.

_____

**COUNSEL**

Tamura D. Coffey, WILSON & ISEMAN, Winston-Salem, North Carolina; James B. Craven III, Durham, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Paul A. Weinman, Assistant United States Attorney, Winston-Salem, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ryan Trantham (Ryan) and Elizabeth Trantham (Elizabeth) appeal their sentences of 168 months and 57 months imprisonment, respectively, which were imposed by the district court after they pled guilty to offenses arising from the armed robbery of a mail truck.[1] We affirm the sentences for the reasons explained below, and dismiss Ryan's appeal in part.

At the time of the robbery, Ryan was employed at the post office where it occurred. Ryan supplied information about the post office to his co-defendant, Christopher Gagnon, who carried out the robbery. Gagnon testified at the Tranthams' joint sentencing hearing that he and Ryan planned the robbery at the Tranthams' residence, where Elizabeth heard them discuss it. He said he believed that Elizabeth heard Ryan discuss with him the need to use a gun to intimidate the postal employees because of the number of times the gun was dis-

_____

[1] Ryan pled guilty to conspiracy to rob the United States mail, see 18 U.S.C. § 371 (1994), armed mail robbery, see 18 U.S.C.A. § 2114(a) (West Supp. 2000), 18 U.S.C. § 2 (1994), and carrying and using a firearm in a crime of violence. See 18 U.S.C.A.§ 924(c) (West Supp. 1999), 18 U.S.C. § 2. Elizabeth pled guilty to conspiracy.

2

cussed. Also according to Gagnon, several weeks before the robbery, he and the Tranthams went to inspect a bridge near a drainage pond where they planned to meet before and after the robbery.

On the evening of November 6, 1998, the Tranthams met Gagnon at the bridge, and Gagnon then proceeded to the loading dock of the post office. At about 6:30 p.m., Gagnon put a gun in the back of a postal employee who had just finished loading a mail truck, forced him to reopen the truck, took nine registered mail bags, and locked him and the driver in the truck. Afterward, Gagnon returned to the bridge, where he and the Tranthams put all the money and valuables he had obtained into one mail bag. Gagnon put the mask, gloves, and gun he had used into another bag and threw it into the pond below the bridge. They then went to the apartment of a friend of Gagnon's where they split the money.

Ryan asked another friend, Brad Snyder, to hold his share of the money for him. Snyder testified at the sentencing hearing that Ryan asked him for help in creating a false alibi. As Ryan had done when he was interviewed by the postal inspectors, Snyder said the Tranthams had eaten at Taco Bell, where Snyder worked, on the night of the robbery. However, he refused to give a sworn statement to that effect. Snyder later turned the money over to the investigators, told them how he came to have it, and told them that Ryan and Elizabeth obtained money from him several times during the month he was holding their share of the robbery proceeds.

Before the sentencing, Elizabeth objected to the probation officer's recommendation that she receive an enhancement for the use of a firearm during the robbery. See U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(B) (1998) (firearm not discharged, but "otherwise used").[2] She argued that use of the gun was not relevant conduct in her case, see USSG § 1B1.3(a)(1)(B), because she was not part of a jointly undertaken criminal activity at the time the decision to use a

_____

[2] The term "otherwise used" is defined as conduct that "did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." USSG § 1B1.1, comment. (n.1(g)).

3

gun was made, and use of the gun was not reasonably foreseeable to her.

In her statement to the probation officer, Elizabeth had maintained that, when she and Ryan went out to meet Gagnon just before the robbery, she thought they were going out to eat, and that she stayed in the car while Ryan and Gagnon talked. She admitted that, after the robbery, she heard Gagnon say that a gun was in the bag he threw in the water, and that she helped count the money. Ryan submitted a letter to the court in which he stated that Elizabeth did not know about the robbery until they were driving to the meeting point on the day of the robbery.

The district court determined that Gagnon's testimony was sufficiently credible to establish, by a preponderance of the evidence, that Elizabeth heard enough of the conversation between him and Ryan while they planned the robbery to know exactly what they planned, including the use of a firearm. The court did not find credible Elizabeth's statement that she knew nothing about the robbery until she and Ryan met Gagnon at the rendezvous spot just before the robbery occurred. The court also found that the use of a firearm during a robbery was reasonably foreseeable to Elizabeth.**3**

On appeal, Elizabeth argues that the district court clearly erred in finding that Gagnon's use of a firearm was reasonably foreseeable to her. However, the district court found, first, that Elizabeth had actual knowledge that a gun would be used, and only secondarily found that it was reasonably foreseeable that a firearm or other weapon would be used in the commission of the robbery. The court decided that Elizabeth had actual knowledge that a firearm would be used based on its assessment of the credibility of Gagnon's testimony. The appeals court does not review the credibility of witnesses. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). In light of Gagnon's testimony, we find that the district court did not clearly err in making the enhancement.

_____

**3** Because there was no evidence that Gagnon and Ryan discussed locking up postal employees, the court found that Gagnon's restraint of the victims was not reasonably foreseeable to Elizabeth.

4

In Ryan's case, the district court decided that Ryan's attempt to obstruct the investigation by creating a false alibi was sufficient to warrant an adjustment for obstruction of justice. See USSG § 3C1.1. Ryan argues that his attempt to have Snyder provide a false alibi for him was not obstruction of justice because it did not significantly impede the investigation. Because the facts were uncontested, the district court's application of the guideline is reviewed de novo. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The government realized that the alibi was false when Snyder got frightened and refused to give a sworn statement. However, an attempt to impede the investigation of the offense is a sufficient basis for the adjustment. See United States v. Hicks, 948 F.2d 877, 884-85 (4th Cir. 1991); see also United States v. Cotts, 14 F.3d 300, 301 (7th Cir. 1994). Therefore, the district court did not err in making the adjustment.

Application Note 4 to § 3E1.1 provides that conduct resulting in an adjustment for obstruction of justice usually indicates a lack of acceptance of responsibility, but that in an extraordinary case, both adjustments may apply. Although Ryan contests the district court's decision to deny him an adjustment for acceptance of responsibility based on his obstruction of justice, we find no extraordinary circumstances in his case, and no clear error in the district court's decision.

Last, Ryan contends that criminal history category II significantly over-represented the seriousness of his past criminal conduct, and that the district court should have departed to category I. The court's discretionary decision not to depart is not reviewable on appeal. See United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990).

We therefore affirm the sentences imposed by the district court, and dismiss Ryan's appeal to the extent he challenges the district court's refusal to depart. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART; DISMISSED IN PART

5