36 F.3d 1095
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sharon RASH, Defendant-Appellant.
 No. 94-5050.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1994.
Decided Sept. 19, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Samuel G. Wilson, District Judge. (CR-93-2-A)
 Peter Curcio, Bressler, Curcio & Stout, Bristol, VA, for Appellant.
 Julie Marie Campbell, Asst. U.S. Atty., Robert P. Crouch, Jr., U.S. Atty., Abingdon, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Sharon Rash was indicted for three violations of the Travel Act, 18 U.S.C. Sec. 1952(a)(3). She pleaded guilty to Count One which charged her with conspiring to travel and cause others to travel in interstate commerce to further the management and carrying on of an unlawful prostitution business in violation of the Travel Act. Based on the identification of four women involved in the prostitution activities, the court increased Sharon Rash's base offense level by four levels pursuant to United States Sentencing Guideline Sec. 2G1.1(c)(1). Sharon Rash has appealed the application of the Special Instruction at Sec. 2G1.1(c)(1) based on the government's alleged failure to prove the elements required by that guideline provision. Granting the district court's application of the guidelines to the facts due deference as required by 18 U.S.C. Sec. 3742(e), we find no error in the district court's application of Sec. 2G1.1 and, accordingly, affirm.
 
 
 2
 Sharon and Jerry Rash operated a prostitution business which constituted only a limited aspect of a much larger racketeering operation involving Abbs Valley Electric Company of Bluefield, Virginia (AVE) and several coal company officials who were AVE customers. AVE sold and repaired electric motors. Robert S. Painter, the owner of AVE, engaged in various schemes to divert business funds to personal use and to pay off coal company officials to help build his business. The payoffs included trips, golf clubs, race and football tickets, payment for vehicles, cash and prostitutes. In return, coal company officials sent AVE business and signed off on falsely inflated AVE invoices.
 
 
 3
 Between 1983 and 1990, Painter used Sharon and Jerry Rash, a married couple living in Beckley, West Virginia, as providers of prostitutes who would engage in sexual acts with AVE customers "in Virginia, West Virginia, and elsewhere."[1] The Rashes recruited women to act as prostitutes, made arrangements for the women to meet with various customers, and paid the women for their services. They received payment from the ultimate client, Painter of AVE.[2] Sharon Rash also participated in the prostitution between 1983 and 1987.
 
 
 4
 Special Agent Harrell Erwin investigated the activities of Sharon and Jerry Rash. Erwin identified four women who acted as prostitutes for the Rashes by name: Donna Adkins,[3] Brenda Pino, Connie Spencer, and Penny Breckenridge. The government produced a transcript of a conversation between the Rashes and Dixie Harvey, a confidential informant, in which Sharon Rash admitted that she had twelve or thirteen women working for her, though not all at one time.
 
 
 5
 On January 11, 1993, Sharon Rash and her husband were indicted by a federal grand jury. Count Nine of the forty-three count indictment charged them with violating the Travel Act, 18 U.S.C. Sec. 1952(a)(3), which provides, in pertinent part, as follows:
 
 
 6
 (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to--(3) ... promote, manage, establish, carry on, or facilitate the promotion, management, or carrying on, of any unlawful activity, ... shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 
 
 7
 The Travel Act violation was based on the Rashes' unlawful management and carrying on of a prostitution business. Section 1952(b) provides that "any unlawful activity" includes "(1) ... prostitution offenses in violation of the laws of the State in which they are committed or of the United States." 18 U.S.C. Sec. 1952(b) (1994). The indictment charged violations of West Virginia CodeSec. 61-8-5[4] and Virginia Code Sec. 18.2-348.[5] The remaining forty-two counts charged other individuals with various racketeering violations. The court granted the Rashes' motion to sever Count Nine from the remaining counts on March 23, 1993.
 
 
 8
 On May 20, 1993, a grand jury returned a superseding indictment charging Sharon and Jerry Rash with three counts. Count One charged the Rashes with conspiring to violate the Travel Act. Counts Two and Three charged the Rashes with separate violations of the Travel Act. Sharon Rash pleaded guilty to Count One on September 14, 1993, and Counts Two and Three were dropped.
 
 
 9
 Prior to the Sentencing Hearing, the probation officer prepared a presentence report. The report indicated correctly that Sec. 2G1.1 called for a base offense level of 14.[6] The probation officer concluded that Sharon Rash qualified for a two level increase underSec. 3B1.1(c) based on her role in the offense.[7] Rash has not contested the base offense level or the two point enhancement. Pursuant toSec. 2G1.1(c)(1), a Special Instruction, Rash acquired an additional increase of four levels because the government was able to identify four women who had travelled or been transported in interstate commerce.[8] The combined offense level of 20 was then reduced to 18 based on a two level reduction for acceptance of responsibility.
 
 
 10
 Both the United States and Sharon Rash objected to the presentence report for various reasons that are not relevant to the disposition of Rash's appeal. Rash also objected to the report on the basis of the four level increase pursuant to Sec. 2G1.1. In response to her objection to the four level increase, the probation officer who prepared the report wrote as follows:
 
 
 11
 The government has given me four names of girls that they can prove were transported or caused to be transported for the purpose of carrying on a prostitution business. In addition, the defendant substantiated this to me by admitting that there were 3-4 other girls involved. This being so, I have no alternative but to enhance the defendant pursuant to U.S.S.G. Sec. 2G1.1(c).
 
 
 12
 At the sentencing hearing held on January 11, 1994, the court accepted the conclusions presented in the presentence report and sentenced Sharon Rash to 27 months to be followed by a two year period of supervised release. She filed a timely notice of appeal on January 21, 1994.
 
 
 13
 The sole issue involves the application of the Sentencing Guidelines to the facts of the instant case. We should not reverse the district court's factual determinations unless the court's findings are clearly erroneous. We should also give due deference to the district court's application of the guidelines to the facts. 18 U.S.C. Sec. 3742(e);[9] United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989); United States v. Gary, 18 F.3d 1123, 1127 (4th Cir.1994); United States v. Camuti, 950 F.2d 72, 75 (1st Cir.1991) (district court's application of the guidelines reviewed only for clear error). There is no question that Sec. 2G1.1 applies to the case. Sharon Rash has contested only the application of the Special Instruction found at Sec. 2G1.1(c)(1). The question to be determined is whether the district court correctly found that there were at least four women transported during the course of the conspiracy to violate the Travel Act.
 
 
 14
 The government has contended that it proved by a preponderance of the evidence that at least four women were so transported in the context of Sharon Rash's prostitution business.[10] United States v. Powell, 886 F.2d 81, 84-85 (4th Cir.1989) (finding that the government only had to prove the quantity of the drug by a preponderance of the evidence because the quantity went to the sentence rather than the defendant's guilt), cert. denied, 493 U.S. 1084 (1990). Sharon Rash has argued that the government failed to show that the transportation of the four women met the "relevant conduct" standard of proof for sentencing purposes, i.e., a preponderance of the evidence. Sharon Rash has claimed that the government must prove 1) that she transported or caused to be transported four women in interstate commerce, and 2) that those four women engaged in prostitution as a result of Sharon Rash's actions. She has not provided any support for her interpretation of the elements the government is required to prove.
 
 
 15
 In her attempt, Sharon Rash provided a lengthy analysis of the Mann Act as applied by the First Circuit in United States v. Camuti, 950 F.2d 72, 75-77 (1st Cir.1991). The case before us, however, involves the Travel Act, and the Mann Act analysis is of limited utility.[11] In Camuti, the defendant pleaded guilty to inducing Rosalind Goldsmith to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C. Sec. 2422. Camuti relies, in large part, on a distinction between inducing or persuading an individual to travel under Sec. 2422 on the one hand, and actually transporting an individual under Sec. 2421 on the other. The First Circuit in Camuti held that the defendant's sentence could not be enhanced for transporting Goldsmith under Sec. 2421 because Goldsmith actually transported herself.[12] Camuti's sentence, nevertheless, had been enhanced for the transportation of two other women for purposes of prostitution, and that enhancement was upheld. Camuti directly transported one of those women for the purpose of engaging in prostitution, and Goldsmith drove the other woman at Camuti's direction.
 
 
 16
 Sharon Rash has noted correctly that her sentence was governed by the same section of the Guidelines that governed Camuti's violation of the Mann Act, Sec. 2G1.1. She argues, "Accordingly, for purposes of sentencing, the trial court should have required the government to prove each and every element required to be proved under the Mann Act before granting the four point enhancement." The applicability of Sec. 2G1.1, however, does not entail or require the applicability of the Mann Act. Aside from the fact that Sharon Rash has not cited any authority for her contention, it has no merit. The Mann Act has absolutely nothing to do with the instant case, and the government is not required to prove any element of a crime charged under that Act.
 
 
 17
 Sharon Rash pleaded guilty to a charge of conspiracy to violate the Travel Act. The Travel Act, 18 U.S.C. Sec. 1952(a)(3), penalizes anyone who travels in interstate commerce or uses any facility in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, or carrying on of any unlawful activity. Under the Travel Act, there is no distinction between actual travelling and inducement to travel similar to that established by Secs. 2421 and 2422 of the Mann Act.
 
 
 18
 The district court did not make any explicit findings as to the four level enhancement. When asked specifically, the court responded, "For the reasons stated in the probation officer's report [Rash's] objections are overruled." The court also concluded, "as to role in the offense, I find that the prostitution operation covered a substantial period of time and involved the prostitution of as many as a dozen prostitutes as indicated by Mrs. Rash's own statements, and implicated coal company and other company officials for numerous companies. That can be deduced from the circumstantial evidence the court heard at [Jerry Rash's] trial as well as the direct statements of Mrs. Rash, herself."[13] The court accepted the findings and recommendations in the presentence report as to Sharon Rash based on her statements, the transcripts of conversations involving Sharon Rash, Agent Erwin's testimony, and the testimony elicited from various witnesses at the trial of Jerry Rash.
 
 
 19
 Special Agent Erwin testified regarding Brenda Pino, Connie Spencer and Penny Breckenridge.[14] During her conversations with the confidential informant, Sharon Rash specifically named Brenda Pino, Connie Spencer, and Penny Breckenridge as three women who had worked for her as prostitutes.[15] Special Agent Erwin testified that Sharon Rash caused the women to travel to Kentucky and various locations in West Virginia in order to meet with customers to engage in prostitution. Sharon Rash specifically told Harvey that she would go down to Pikeville, Kentucky, and "depending on how much cash flow [she] was getting ... [she'd] take two or three girls with [her], [they'd] get in one, [they'd] start off with one room, and then...." She also mentioned customers who travelled from Grundy, Virginia to meet "her girls" in Bluefield.
 
 
 20
 During the course of the sentencing hearing, Sharon Rash's counsel seemed to acknowledge the validity of the Pino and Adkins evidence: "We simply submit that at best there should be two pseudo counts, those being Donna Adkins and Brenda Pino's as opposed to the four pseudo counts involving Breckenridge and Spencer." The evidence also supports inclusion of a woman named Penny Breckenridge, as noted above, and Connie Spencer.
 
 
 21
 As to Connie Spencer, Sharon Rash has tried to make much of the fact that Spencer did not actually go through with her engagement involving Ray Perkins. The Travel Act does not require that the individual actually engage in the prostitution. Rather, the Act requires that the Defendant, i.e., Sharon Rash, travel in interstate commerce with the intent to facilitate the promotion, management, or carrying on of the unlawful prostitution. It is abundantly clear from the transcript that Sharon Rash accompanied and transported Connie Spencer, that she intended to promote her prostitution with Ray Perkins, and that she encouraged Connie Spencer to go forward with the transaction for four hundred dollars.
 
 
 22
 The evidence supports the following conclusions: 1) all four of the women in question worked as prostitutes for Sharon Rash and for her husband; and 2) Sharon Rash transported those women and accompanied her prostitutes to engagements on occasion, engaging in interstate travel in order to manage, carry on, and facilitate the unlawful prostitution business that she and her husband conducted.
 
 
 23
 In short, the government proved by a preponderance of the evidence that four women had travelled or been transported in interstate commerce. Accordingly, the district court's decision to enhance the base level offense by four levels pursuant to Sec. 2G1.1(c) is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The indictment specifically notes "Overt Acts" of prostitution and transportation for the purposes of prostitution in Beckley, West Virginia (for a client from Kentucky); in Princeton, West Virginia (at the request of AVE); in Bluefield, West Virginia (for a client from Kentucky); and a number of other instances at the Rash home in Beckley, West Virginia. Transcripts of Sharon Rash's conversations show that she took prostitutes to Pikeville, Kentucky. The Rashes, living in West Virginia, were usually paid by AVE in Virginia
 
 
 [2]
 Special Agent Harrell Erwin testified that the Rashes also provided prostitutes for R & T Electric Company, Billy Joe Kaufman, Joe Ferris, Paul Kiser and Ray Vance
 
 
 [3]
 Donna Adkins apparently admitted to prostituting herself in connection with the Rashes at Jerry Rash's trial. The appellant does not contend that she did not violate the Travel Act with respect to Donna Adkins
 
 
 [4]
 Section 61-8-5 addresses "Houses of ill fame and assignation; penalties [and] jurisdiction of courts." Paragraph (a) specifically prohibits individuals from offering, or offering to secure, another for the purposes of prostitution, or for any other lewd or indecent act, and establishes penalties for those
 who for another or others shall direct, take, or transport, or offer or agree to take or transport, or aid or assist in transporting, any person to any house, place, building, hotel, tourist camp, other structure, vehicle, trailer, or other conveyance, or to any other person with knowledge or having reasonable cause to believe that the purpose of such directing, taking, or transporting is prostitution, lewdness, or assignation....
 Paragraph (b) proscribes the solicitation, inducement, enticement or procurement of another to commit acts of prostitution.
 
 
 [5]
 Section 18.2-348 proscribes aiding prostitution or illicit sexual intercourse:
 It shall be unlawful for any person ... with knowledge of ... the immoral purpose of such visit, to take or transport or assist in taking or transporting ... any person to a place ... used or to be used for the purpose of lewdness, assignation or prostitution within this Commonwealth; or procure or assist in procuring for the purpose of illicit sexual intercourse ... or to give any information or direction to any person with intent to enable such person to commit an act of prostitution.
 6 U.S.S.G. Sec. 2X1.1(a) governing Attempt, Solicitation and Conspiracy provides the applicable guideline for the charge here: "The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." Note 2 of the Commentary to Sec. 2X1.1 indicates that the substantive offense means the offense the defendant was convicted of conspiring to commit. Here, Sharon Rash pleaded guilty to conspiring to commit a violation of the Travel Act by managing and carrying on an unlawful prostitution business. U.S.S.G. Sec. 2G1.1 governs sentences for "Transportation for the Purpose of Prostitution or Prohibited Sexual Conduct."
 7 U.S.S.G. Sec. 3B1.1 addresses the defendant's aggravating role in the offense. "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels." Sec. 3B1.1(c).
 
 
 [8]
 The probation officer applied the multiple count rules in Chapter Three, Part D of the Sentencing Guidelines pursuant to Sec. 2G1.1(c): "If the offense involved the transportation of more than one person, Chapter Three, Part D (Multiple Counts) shall be applied as if the transportation of each person had been contained in a separate count of conviction."
 
 
 [9]
 "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e) (1994)
 
 
 [10]
 At one point during the hearing, counsel for Sharon Rash argued that the four point enhancement, at least as to Connie Spencer and Penny Breckenridge, was apparently based only on pages 19 and 30 of the transcript. "I've read, and read, and read both pages 19 and page 30, and in neither case do I see conclusively that Sharon Rash transported Penny Breckenridge or Connie Spencer." First, however, the district court based its decision on the evidence and testimony elicited at Jerry Rash's trial, the testimony of Special Agent Erwin, and his assessment of the witness' credibility along with the various excerpts from the transcript. That is, pages 19 and 30 of the transcript were not the only evidence involved. Second, the government was not required to prove the allegation "conclusively." Rather, the applicable standard was preponderance of the evidence
 
 
 [11]
 The government's failure to meet any of the elements required under the Mann Act is irrelevant to the disposition of Sharon Rash's appeal
 
 
 [12]
 Camuti's conviction had been based on his inducement of Goldsmith to travel in interstate commerce for the purpose of prostitution in violation of 18 U.S.C. Sec. 2422
 
 
 [13]
 Rash has cited that passage as one allegedly "justifying appl[ication of] the four point enhancement" and has noted that the district court did not address by name the four individuals discussed by Special Agent Erwin at the hearing. In fact, in the "role in the offense" passage, the court was discussing the application of the two level enhancement based on Rash's role in the offense, rather than the four level enhancement at issue in the present appeal. At most, the passage indicates that the court believed that at least four women were involved in the Rashes' prostitution business
 
 
 [14]
 On cross-examination, Erwin admitted that he had never actually met Penny Breckenridge. He testified, however, that Buster Harvey, a client of Painter, indicated that she was a black woman that he had met at his request in the company of Sharon Rash in Bluefield, West Virginia. A woman named Penny is also frequently mentioned in the transcripts
 
 
 [15]
 Because Donna Adkins admitted to engaging in prostitution in connection with the Rashes, there is no doubt that she may be considered as one woman under Sec. 2G1.1(c)(1) for enhancement purposes