64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny Franklin CARAWAN, a/k/a Top, a/k/a Sergeant Major
Whitecotton, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willis E. CULLOP, Defendant-Appellant.
 Nos. 94-5078, 94-5083.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 28, 1994.
Decided Aug. 14, 1995.
 
 ARGUED: Robert James Wagner, WAGNER & WAGNER, Richmond, VA, for Appellants. John Granville Douglass, Assistant United States Attorney, Richmond, VA, for Appellee. ON BRIEF: John L. Lumpkins, Jr., Mechanicsville, VA, for Appellant Cullop. Helen F. Fahey, United States Attorney, Richmond, VA, for Appellee.
 Before RUSSELL and MOTZ, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Johnny Carawan and Willis Cullop appeal their convictions stemming from their involvement in a conspiracy to steal government property in violation of 18 U.S.C. Sec. 371.[1] Carawan also appeals his sentence. Carawan contends that there was insufficient evidence to convict him of eight counts of theft of government property. He also contends that the trial court erred in holding him responsible for the theft of over $100,000 of stolen property for sentencing purposes. Cullop contends that there was insufficient evidence to convict him of either conspiracy or theft of government property. He also contends that the evidence was insufficient to convict him of perjury. We find that these arguments lack merit and, therefore, affirm the convictions and Carawan's sentence.
 
 I.
 
 2
 On April 24, 1993, a grand jury returned a multiple count indictment against Johnny Carawan and Willis Cullop. Both were charged with conspiracy to steal government property and several individual theft charges. Carawan also was charged with obstruction of justice and forgery, and Cullop with perjury. At trial, the Government produced documents showing, and various witnesses testified, that, on numerous occasions, Carawan obtained large quantities of property from Defense Reutilization and Marketing Offices (DRMOs) in North Carolina and Virginia. Witnesses also testified that Carawan sold the property at flea markets and to individuals and that the property was not ordered by or received at the reserve units for which the records indicated it was intended. In addition, witnesses testified that Cullop accompanied Carawan to DRMOs on two occasions and that Cullop sold items of military property out of his basement and to a discount store. There also was evidence presented at trial that Cullop testified falsely before the grand jury.
 
 II.
 
 3
 Carawan argues that he is entitled to an acquittal on the theft charges in counts two through nine of the indictment because there was not sufficient evidence to convict him of them. These counts charge that, on various dates between December 1991 and February 1992, Carawan "did knowingly and unlawfully steal, purloin and convert to [his] own use and to the use of another, property belonging to the United States having a value in excess of [$100]," in violation of 18 U.S.C. Sec. 641.[2] In reviewing a conviction for sufficiency of the evi dence, we must view all evidence introduced at trial in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all evidence, however adduced. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991).
 
 
 4
 Carawan's first argument is that the Government did not meet its burden of proving that the value of the property he allegedly stole exceeded $100. This argument lacks merit. According to the terms of the statute, "the word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." The Government produced detailed evidence of the "cost price" of the stolen items, which ran in the thousands of dollars for each theft. (J.A. at 301-317, 417-426.) Viewing this evidence in the light most favorable to the Government, a reasonable jury could determine that Carawan stole government property exceeding $100 in value on each of the eight occasions charged in the indictment.
 
 
 5
 Carawan argues that the cost price is irrelevant because the Government failed to prove the condition of the stolen items. He relies on United States v. Clutterbuck, 421 F.2d 485 (9th Cir.1970), cert. denied, 404 U.S. 858 (1971). Clutterbuck, however, does not provide him the relief he seeks. In Clutterbuck, the defendant stole aircraft parts that the Government had "discarded as outworn," "were held for sale as steel scrap," and were identified as scrap on government books. Id. at 485-86. Under these circumstances, the Ninth Circuit held that the items had "lost their original identity" and had been "transformed into scrap." Id. at 486. Thus, the original "cost price" of the items was irrelevant for valuation purposes in that, "so far as the Government [was] concerned there [was] no longer anything to which [the] 'cost price' [could] relate." Id.
 
 
 6
 Carawan's case is not comparable. He did not steal scrap. He stole items that were stored at the DRMOs for reuse by other government agencies. Every item was accounted for by the Government under its original description and listed at its original procurement cost. (J.A. at 304-17.) Thus, it had not "lost its original identity" as had the scrap aircraft parts in Clutterbuck, and it was not improper to use its cost price for valuation purposes. Moreover, a witness testified that the bulk of the property stored at DRMOs is in fair or new condition and that property not fit for use is normally scrapped upon receipt. (J.A. at 108.) Thus, even disregarding the cost price, a jury could determine, based on the evidence of the quantity of property involved, that Carawan stole more than $100 worth on each occasion charged.
 
 
 7
 Carawan next contends that the Government failed to demonstrate adequately that he converted the property to his personal use. He instead claims that he used the property for legitimate purposes associated with his reserve unit. The evidence, however, does not support his claim. With a few exceptions, the evidence overwhelmingly indicates that the property never reached the units for which it was intended and that Carawan used it for personal gain. For example, witnesses testified that much of the items that Carawan purchased at the DRMOs never arrived at the units for which the records indicated they were intended. (J.A. at 145-47, 214-219, 251-53, 281-82.) There also was evidence that Carawan sold property at flea markets (J.A. at 28-30) and gave property to people who helped him select it and load it at the DRMOs. (J.A. at 142-43.) Finally, there was evidence that Carawan or others at his instruction intercepted and destroyed confirming copies of the forms that Carawan filled out when he pur chased property at DRMOs. (J.A. at 40.) By intercepting these forms, he prevented the Unit Property Book Officer from learning that a unit had been issued property from a DRMO that had never physically arrived. Viewed in the light most favorable to the Government, this evidence is more than sufficient to prove that Carawan converted the property to his own use.
 
 III.
 
 8
 Carawan next contends that, for sentencing purposes, the trial court improperly calculated the value of the property that Carawan took. The court valued the property at $110,794. We must accept this factual finding unless it is clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). The court arrived at the figure by determining how much it would cost the Government to purchase the items. The court considered only items taken from the DRMO in Richmond, Virginia. It did not consider items taken from another DRMO because of the uncertainty of the condition of that property. The sentencing guidelines make clear that the replacement cost of property taken is an acceptable method of determining its value. 18 U.S.C. Sec. 2B1.1 Application Note 2. Moreover, the court is not required to determine the value of the property with precision. It need only make a reasonable estimate of the value, given available information. Id. Application Note 3. Given these considerations, we find that the trial court's determination that Carawan stole $110,794 in government property is not clearly erroneous. Accordingly, we affirm his sentence.
 
 IV.
 
 9
 Appellant Cullop argues that the evidence was insufficient to support his conspiracy conviction. Again, when reviewing a conviction for sufficiency of the evidence, we must view all evidence introduced at trial in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all evidence, however adduced. Glasser, 315 U.S. at 80; Giunta, 925 F.2d at 764. To establish guilt in a conspiracy case, the Government must prove that (1) two or more persons agreed to do something unlawful; (2) the defendant knowingly and willfully participated in the agreement; and (3) at least one of the coconspirators committed an overt act in furtherance of the agreement. United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 484 U.S. 969 (1987), and cert. denied, 485 U.S. 991 (1988). The Government may rely upon circumstantial evidence of agreement and intent. Giunta, 925 F.2d at 764.
 
 
 10
 Cullop contends that the evidence at trial showed only that he went on an authorized trip with Carawan to pick up items at the supply center. A witness testified, however, that Cullop's basement was filled with stacks of military property of the same type that Carawan had signed for at the DRMO, when accompanied by Cullop. (J.A. at 162-67.) There also was evidence that Cullop sold some of the property in his basement to a discount store and, when asked, he stated that he was selling it for his boss Carawan. (J.A. at 167-68.) A reasonable jury could infer from this evidence that Carawan and Cullop agreed to steal government property from a DRMO, that Cullop was a willing participant in the agreement, and that, by taking the property and selling it, the conspirators committed overt acts in furtherance of the conspiracy. Thus, viewed in the light most favorable to the Government, there was sufficient evidence to convict Cullop of conspiracy and his conviction, accordingly, is affirmed.
 
 
 11
 Cullop next contends that the evidence was insufficient to support his convictions for theft of government property. A witness--Robert Riddle--testified, however, that he accompanied Cullop and Carawan to a DRMO on January 29, 1992, that property from the DRMO was loaded onto a truck occupied by Riddle and Cullop, and that they drove the truck to Cullop's house and sorted the property in Cullop's yard. There also was evidence presented that, three days later, on February 1, 1992, Riddle sold property for Cullop to a discount store near Petersburg. (J.A. at 174-75, 448.) The proprietor made a check out to Cullop for $166. (J.A. at 448.) Clearly, viewing this evidence in the light most favorable to the Government, a reasonable jury could conclude beyond a reasonable doubt that Cullop stole property from the Government.
 
 V.
 
 12
 Finally, Cullop argues that the evidence was insufficient to support his perjury conviction. He contends that the Government failed to establish beyond a reasonable doubt that he knowingly made a false statement. This contention, however, lacks merit. The following exchange occurred during his grand jury testimony:
 
 
 13
 Q: Did you ever take anyone to the basement of your home and show them property that had come from the base near Petersburg and offer that property for sale? Did you ever do that?
 
 
 14
 A: No sir.
 
 
 15
 Q: Did you ever sell any of the property that came from that base near Petersburg?
 
 
 16
 A: No sir.
 
 
 17
 (J.A. at 444-45.) In fact, the evidence showed that Cullop both stored and sold numerous items that came from a base near Petersburg. The jury rejected his implausible claim that he assisted Carawan in obtaining property from the base, but had no idea of the source of identical property that Carawan asked him to store in his basement during the same period of a few weeks.
 
 
 18
 If there was any conceivable confusion about the source of property, it had no bearing on his response to an even simpler question:
 
 
 19
 Q: Have you ever sold any property to discount thrift stores?
 
 
 20
 A: No sir.
 
 
 21
 (J.A. at 445.) Two checks, Cullop's bank statement, and the testimony of Riddle and the proprietor of "Discounts Galore" all demonstrate that this response was false. Accordingly, we affirm Cullop's perjury conviction.
 
 VI.
 
 22
 For the foregoing reasons, Carawan's and Cullop's convictions and Carawan's sentence are
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 At the time that Appellants were convicted and sentenced, 18 U.S.C. Sec. 371 provided:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
 On September 13, 1994, Congress amended this section by replacing the phrase "not more than $10,000" with the phrase "under this title."
 
 
 [2]
 At the time that Appellants were convicted and sentenced, 18 U.S.C. Sec. 641 provided:
 Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
 Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
 Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined under title or imprisoned not more than one year, or both.
 The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.
 On September 14, 1994, Congress amended this section by replacing the phrase "not more than $10,000" with the phrase "under this title."