**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ANDRES OJEDA-CRUZ, a/k/a Alvaro,
  *Defendant-Appellant.*

No. 01-4372

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

MIGUEL OJEDA-CRUZ, a/k/a Rigo,
a/k/a Miguel Ojeda-Angeles, a/k/a
Franklin Figueroa-Alvarado,
  *Defendant-Appellant.*

No. 01-4387

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-00-74-MU)

Submitted: January 29, 2002

Decided: February 12, 2002

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

Mark P. Foster, Jr., Charlotte, North Carolina; Eric A. Bach, Charlotte, North Carolina, for Appellants. Robert J. Conrad, Jr., United States Attorney, Brian Lee Whisler, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Brothers Andres Ojeda-Cruz (Andres) and Miguel Ojeda-Cruz (Miguel) were tried by a jury and convicted of conspiracy to commit fraud and misuse of identification documents, 18 U.S.C. §§ 371, 1028(a)(3), (a)(5), 1526 (West 2000) (Count 1); possession of false identification documents with intent to distribute, and aiding and abetting, 18 U.S.C.A. §§ 1028(a)(3), 18 U.S.C. § 2 (1994) (Count 2); possession of document-making implements with intent to produce false identification documents, and aiding and abetting, 18 U.S.C.A. §§ 1028(a)(5), 2 (Count 3);* uttering counterfeit false alien registration receipt cards, and aiding and abetting, 18 U.S.C.A. §§ 1546(a), 2 (Count 4); and possession of false Social Security cards with intent to distribute, and aiding and abetting, 42 U.S.C.A. § 408(a)(7)(C) (West 2001), 18 U.S.C. § 2 (Count 5). Miguel was also convicted of illegally reentering the country after being deported, 8 U.S.C.A. § 1326(a) (West 1999) (Count 8). Andres was sentenced to a term of thirty-three months imprisonment. Miguel received a sentence of thirty-six months imprisonment for the conspiracy and related convictions, and a concurrent twenty-four-month sentence for illegal reentry. Andres appeals his conviction on all counts, alleging that the evidence

---

*In Miguel's case, Count Three was later dismissed on the government's motion.

was insufficient to support the convictions. Both Andres and Miguel appeal their sentences on the ground that the district court clearly erred in finding that they were responsible for sentencing purposes for an offense involving 100 or more documents. *See U.S. Sentencing Guidelines Manual* § 2L2.1(b)(2)(C) (2000). Andres also contends that the district court clearly erred when it rejected his claim that he was a minimal or minor participant in the offense. We affirm.

After agents of the Immigration and Naturalization Service (INS) and the North Carolina Bureau of Investigation learned that counterfeit identification documents were being produced and sold in Charlotte, North Carolina, and purchased several such documents through informants, they conducted a search of three apartments on March 23, 2000. Miguel Ojeda-Cruz was living in one of the apartments with his small son. Also present were two men later charged as co-defendants in the instant offenses, two boxes of business cards, a Polaroid camera and a camera stand used for close-up pictures of photographs, blank Social Security cards, and several counterfeit identification documents with Andres' picture on them. The business cards in one of the boxes bore the name "Alvaro."

The other two apartments that were searched appeared to be used solely for the production of documents, and contained a variety of equipment for that purpose, as well as a total of 287 cut-out photographs of individuals. On the back of each photograph, biographical information was written, as well as the nickname of the conspirator who had dealt with the individual. A notebook and a day planner were seized, both of which contained tally sheets that recorded sales by the conspirators. Miguel's nickname, "Rigo," appeared on thirty-eight of the cut-out photographs and on the tally sheets. The name "Alvaro" also appeared in the ledgers.

On the same day, agents arrested Andres Ojeda-Cruz with Alphonso Andres ("Omar") Perez-Cruz, the suspected leader of the counterfeit document ring as they were reportedly about to leave town. Andres was carrying business cards bearing the name "Alvaro," a counterfeit Mexican driver's license in his own name, and an answer key for the North Carolina driver's license written test. When interviewed after his arrest, Andres admitted being involved in the distribution of counterfeit identification documents, but said he was

not involved in their manufacture, and that the person who manufactured the documents was Esteban Garza. Garza was not named in the indictment. However, Andres was carrying an address book containing the names and addresses of many of the co-defendants in the instant offense. At trial, Edgardo Pablo-Roman, who was arrested in one of the apartments but not charged in the offense, testified that he knew Miguel as Rigo and Andres as Alvaro, that he had seen both of them with photographs and false documents, and that he once accompanied Andres when he went to take a photograph. Pablo-Roman also testified that he had seen Andres and Miguel handing out business cards to potential customers.

We find first that the evidence was sufficient to support Andres' conviction. A guilty verdict must be sustained if there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). The government is permitted the benefit of all reasonable inferences from the facts proved to the facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). In evaluating the evidence, this court does not review the credibility of the witnesses, and assumes that the jury resolved all contradictions in the testimony in favor of the government. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999). Based on the evidence presented at trial, the jury could reasonably conclude that Andres was involved in the charged conspiracy and had at least aided and abetted the commission of each of the substantive offenses.

We review the district court's factual findings concerning sentencing under the clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989). Although the government did not prove that either Andres or Miguel had direct involvement with 100 or more counterfeit documents, the district court could infer from the evidence introduced at trial, and summarized by the government at sentencing, that both Andres and Miguel were aware of their co-defendants' activities and were themselves active participants in the conspiracy, and that it was at least reasonably foreseeable to them that their conspirators had produced 100 or more counterfeit documents. *See* USSG § 1B1.3(a)(1)(B). Therefore, the district court did not clearly err in making the enhancement under USSG § 2L2.1(b)(2)(C). The court's finding was adequate in that it adopted the reasoning of

the probation officer's response to Appellants' objections to the pre-sentence report and the government's argument at sentencing.

Finally, we find no error in the district court's determination that Andres had more than a minimal or minor role in the offense. A defendant has a minimal role in a concerted criminal activity if he is "among the least culpable of those involved in the conduct of a group." USSG § 3B1.2, comment. (n.1). A minimal role is indicated by a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others . . . ." (*Id.*). Application Note 3 to § 3B1.2 defines a minor participant as "any participant who is less culpable than most other participants, but whose role cannot be described as minimal." The defendant has the burden of showing by a preponderance of the evidence that he is enti-tled to a mitigating role adjustment. *United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999), *cert. denied*, 528 U.S. 1177 (2000). Although Andres' precise role in the conspiracy was not established, the evidence did not show that he was less culpable than the other conspirators. Therefore, we cannot find that the district court clearly erred in refusing him a two-level or four-level reduction under § 3B1.2.

We accordingly affirm the convictions and sentences. We dispense with oral argument because the facts and legal contentions are ade-quately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*