**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 95-5930

PAUL WILLIAM NURSE, a/k/a Pablo,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 96-4384

VANESSA FREZER,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CR-95-90)

Submitted: September 2, 1997

Decided: October 24, 1997

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert E. Bogan, NELSON, MULLINS, RILEY & SCARBOR-
OUGH, L.L.P., Columbia, South Carolina; Susan Z. Hitt, Assistant
Federal Public Defender, Columbia, South Carolina, for Appellants.
J. Rene Josey, United States Attorney, Scarlett A. Wilson, Assistant
United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Paul Nurse appeals from his jury convictions and sentence for con-
spiracy to possess with intent to distribute and to distribute cocaine
and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1994), two
counts of possession with intent to distribute cocaine base, in viola-
tion of 21 U.S.C. § 841(a), and possession of a stolen firearm, in vio-
lation of 18 U.S.C.A. § 922(g) (West Supp. 1997). Vanessa Frezer
appeals from her jury convictions and sentence for possession with
intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a),
and possession of a firearm by an alien, in violation of 18 U.S.C.A.
§ 922(g).**1** In this consolidated appeal, Appellants' formal brief raises
four issues. In addition, Nurse has filed a pro se supplemental brief
raising numerous additional claims. Because we find that none of
these claims has merit, we affirm Appellants' convictions and sen-
tences.

_____

**1** Both Nurse and Frezer were also convicted of using or carrying a fire-
arm in connection with a drug trafficking offense, in violation of 18
U.S.C.A. § 924(c) (West Supp. 1997). These convictions were vacated
by the district court under <u>Bailey v. United States</u>, ___ U.S. ___, 64
U.S.L.W. 4039 (U.S. Dec. 6, 1995) (Nos. 94-7448/7442).

2

I.

Since at least 1991, Dexter Pendergrass distributed cocaine in Chester, South Carolina, and West Virginia, using drugs purchased initially from sources in Charlotte, North Carolina, and later from New York City. After deciding to obtain a different source of drugs, Pendergrass was introduced to Rodney Wade and Nurse by their mutual friend, Robert Cunningham. At their first meeting, Wade and Nurse "fronted" Pendergrass an ounce of cocaine for which he was to pay $1300. Later that night, Pendergrass paid $600, with the remainder to be paid the following day.

On March 6, 1995, Pendergrass met with Nurse and a man Nurse identified as his brother. At that meeting Pendergrass paid the remaining $700, purchased an ounce of cocaine for $1100, and was fronted two ounces of cocaine base by Nurse.

The following day, Pendergrass was arrested, and he agreed to cooperate with the police by contacting the source of his cocaine. Pendergrass made recorded calls to Wade's pager and to Cunningham. Pendergrass told Cunningham and Nurse that he had to throw away the cocaine that Nurse and Nurse's brother had fronted him on March 6. Pendergrass did this so that Nurse and Cunningham would not hear of his arrest and subsequent cooperation. Pendergrass testified that, when he told Nurse that the cocaine was lost and he had no money, Nurse became very angry and threatened him with a gun.

Nevertheless, Pendergrass, Wade, Nurse, and Cunningham negotiated a quarter kilogram deal. Pendergrass convinced Nurse that his friend, actually government agent Rodney Blacknall, was going to pay Nurse for the lost cocaine and buy an additional nine ounces of cocaine base. On March 13, Pendergrass, Cunningham, and Blacknall drove from Chester, South Carolina, to a McDonald's restaurant in Columbia, South Carolina, to meet with Nurse. Government agents conducted audio and visual surveillance of the McDonald's parking lot, and Blacknall wore a wire.

After a brief conversation, Nurse and Cunningham drove away, leaving Pendergrass and Blacknall at McDonald's. Nurse drove Cunningham to a residence located near Williams Brice stadium. Nurse

3

told Cunningham to get into a different car, a blue Chevrolet, parked in the residence's driveway. Vanessa Frezer was seated in the front passenger seat of the vehicle.

After directing Frezer to get into the back seat and Cunningham to sit in the front passenger seat, Nurse drove back to a parking lot adjacent to McDonald's. Cunningham testified that Nurse instructed Frezer to "reach me that," whereupon Frezer pulled down the top part of the back seat and handed Nurse a bag containing cookies of cocaine base. Cunningham testified that he saw a nine millimeter gun in the secret compartment. Once Frezer handed Nurse the cookies, Nurse counted out eight of them and gave them to Cunningham.

Nurse then drove the car into the McDonald's parking lot, and Cunningham entered McDonald's to tell Pendergrass and Blacknall that he had the drugs. Pendergrass and Blacknall went to Nurse's vehicle where Blacknall paid Nurse. Pendergrass, Cunningham, and Blacknall then returned to their vehicle, where Cunnigham produced the drugs. At that moment, the police moved in to make the arrests.

The Chevrolet was subsequently searched and a firearm was found in a secret compartment. A bag of cocaine base was found on the ground under the car. The total weight of the cocaine base recovered on March 13 was 311.93 grams.

Nurse, Frezer, Cunningham, and Wade were charged in a seven count superseding indictment.[2] Nurse and Frezer's trial lasted for two weeks. The jury returned guilty verdicts on multiple counts as to each Defendant. Frezer was sentenced to 151 months imprisonment, followed by five years supervised release. Nurse was sentenced to 293 months imprisonment, followed by a term of five years supervised release. Both Nurse and Frezer challenge their convictions and sentences in this consolidated appeal.

_____

[2] Cunningham tendered his guilty plea prior to trial and testified for the Government. Wade entered his guilty plea after approximately one week of trial testimony.

4

II.

During voir dire, the Government used six of its seven peremptory strikes against African Americans. Nurse and Frezer, who are both black, challenged two of the Government's strikes at trial alleging that they were based on race in violation of Batson v. Kentucky, 476 U.S. 79 (1986). We do not find that the trial court clearly erred in denying Appellants' Batson challenge.

The process for examining an objection to peremptory challenges under Batson is as follows: (1) a defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for excusing the juror in question; and (3) the trial court must determine whether the defendant has carried the burden of proving purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 358-59 (1991). Here, the trial court found that a prima facie showing of discrimination was made, and the burden then shifted to the prosecutors to explain their basis for striking the jurors in question.

The prosecutors stated that Gary Davis had been challenged because he was casually dressed and "disheveled." The prosecutors claimed that Angela Lynn was challenged because"she looked carefully and longingly" at Nurse, would not make eye contact with the prosecution, and "seemed to identify" with another female venire person who had a shoplifting conviction.

In evaluating the reasons offered by a prosecutor for exercising a peremptory challenge, the focus is on the facial validity of the explanation. Unless discriminatory intent is inherent in the prosecutor's explanation, the reason advanced will be deemed to be race-neutral. The explanation need not be "persuasive, or even plausible," so long as it is neutral. Purkett v. Elem, 514 U.S. 765, 768 (1995). Moreover, because the trial court is in the best position to observe the demeanor and judge the credibility of the attorney who exercised the challenge, great deference is accorded to a trial court's conclusion that the proffered reasons were not pretextual. Moore v. Keller Indus., 948 F.2d 199, 202 (5th Cir. 1991).

5

Here, the prosecutors articulated non-racial reasons, those being dress and eye contact. Dress and hairstyle have been recognized as legitimate reasons for using peremptory strikes against potential jurors. See United States v. Clemons, 941 F.2d 321, 325 (5th Cir. 1991). Further, lack of eye contact, body language, and apparent sympathy for the defendant are facially neutral explanations. See id.; United States v. Roberts, 913 F.2d 211, 214-15 (5th Cir. 1990).

Because the prosecutors were able to provide race-neutral reasons for each strike, the defendants were required to show purposeful discrimination by the Government. See Purkett, 514 U.S. at 768 (holding that the burden of persuasion to demonstrate purposeful discrimination ultimately rests with the opponent of the strike). The trial court conducted a "line-up" and viewed all the jurors in an attempt to compare Davis' appearance to the other jurors. The trial court also placed one prosecutor under oath to testify and be subjected to cross-examination regarding the look he noticed Lynn giving Nurse and his own inability to establish eye contact with Lynn. The trial court was in a position to evaluate the appearance of the jurors and assess the credibility of the prosecutors' explanations. The trial judge was specific in its findings regarding both these aspects.

Because the issues presented in a Batson challenge turn on evaluations of credibility, we review the district court's findings under a clearly erroneous standard. United States v. Grandison, 885 F.2d 143, 146 (4th Cir. 1989). Giving proper deference to the trial court, we conclude that Nurse and Frezer failed to show purposeful discrimination, and the district court's findings, which are supported by the record, are not clearly erroneous.

III.

In his formal brief, Nurse challenges the denial of his motion for acquittal regarding his conviction for possession of a stolen firearm. In his pro se supplemental brief, he asserts that insufficient evidence supported his convictions for conspiracy and possession with intent to distribute cocaine base on March 13.[3] We review a denial of a

_____

[3] Nurse was convicted of distributing cocaine base on March 6, 1995, and possessing with intent to distribute cocaine base on March 13, 1995.

6

motion for acquittal under a sufficiency of evidence standard. Fed. R. Crim. P. 29; see United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992). In Glasser v. United States, the Supreme Court explained that a jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." 315 U.S. 60, 80 (1942). Further, we assess the evidence in the light most favorable to the Government. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, #6D6D 6D# U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868).

First, Nurse contends that there was no evidence that he knew the firearm was in the Chevrolet. The record, however, belies this assertion. Cunningham testified that, shortly after their arrests, Nurse told him that the gun could not be traced to Nurse, because he bought it from someone who had stolen it from a gun store in Georgia. Cunningham also testified that Nurse told him he would lie, if questioned, and say that the gun was already in the car when he rented it. This evidence, if believed by the jury, was sufficient to show possession of the firearm by Nurse.[4]

Next, Nurse asserts that insufficient evidence supported his convictions for conspiracy and possession with intent to distribute. Viewed in the light most favorable to the Government, the evidence at trial clearly showed that Nurse agreed with Wade and Cunningham to distribute cocaine base to Pendergrass. In addition, the evidence revealed that Nurse entered into an agreement with Frezer, Cunningham and Pendergrass to sell cocaine base to Blacknall on March 13. Blacknall testified that, on March 13, he paid Nurse for the cocaine base and received the drugs from Cunningham, who testified that he received

_____

[4] Because the evidence was sufficient to prove possession of the firearm beyond a reasonable doubt, it was clearly sufficient to support Nurse's sentence enhancement under U.S. Sentencing Guidelines Manual § 2D1.1 (1995). This adjustment applies when a weapon is "present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment. (n.3). Because, based on the record, the district court's determination that the firearm was present so as to justify an enhancement was not clearly erroneous, see United States v. Apple, 915 F.2d 899, 914 (4th Cir. 1990) (standard of review), we affirm the enhancement.

7

them from Nurse. The police recovered over 311 grams of cocaine base from the crime scene. We hold that, in construing this evidence in the light most favorable to the Government and drawing all reasonable inferences therefrom, a rational jury could easily have found Nurse guilty of conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base.

IV.

Nurse next contends that the district court erred by enhancing his sentence under U.S. Sentencing Guidelines Manual§ 3C1.1 (1995) for obstruction of justice. Cunningham testified at Nurse's sentencing hearing that Nurse attempted to bribe him by offering him $25,000 to testify that Nurse and Frezer had nothing to do with drug trafficking. Cunningham was subjected to cross-examination by Nurse's counsel. Nurse asserts that Cunningham's uncorroborated testimony was insufficient to prove obstruction of justice.

The Government must prove the factual basis for an enhancement by a preponderance of the evidence. Furthermore, when, as here, the issue is primarily a factual determination, we reverse only if the decision was clearly erroneous. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Finally, the weight given an accomplice's testimony is a decision strictly within the province of the district court. See United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996) (finding of perjury where defendant's testimony contradicted accomplice's testimony not clearly erroneous). Given Cunningham's testimony and the fact that Nurse offered no contradictory evidence,[5] we find that the Government met its burden of proof. See United States v. Riley, 991 F.2d 120, 125-26 (4th Cir. 1993).

_____

[5] Contrary to Nurse's assertion, we find that the district court did not improperly shift the burden of proof to Nurse. When the district court noted that Nurse did not deny the obstructionist conduct, it was simply commenting on the evidence before it. As discussed above, Cunningham's testimony, if believed by the district court, was sufficient to support the enhancement, and Nurse failed to contradict that testimony.

8

V.

Frezer contends that insufficient evidence was introduced to support her convictions for possession with intent to distribute cocaine base and possession of a firearm by an alien. She asserts that the prosecution failed to present sufficient evidence to show possession of either the drugs or the firearm. Frezer's argument concerning the drugs is easily dispensed with. The evidence showed that Frezer was waiting for Nurse's arrival. Once Nurse, Cunningham, and Frezer were in the car, Nurse asked Frezer to "reach me that." Frezer, without any further clarification, knew to open the backseat secret compartment which contained the cocaine base and the gun. Frezer than took the cocaine base from the compartment and handed it to Nurse to complete the transaction. From this evidence, a reasonable jury could find that Frezer actually possessed cocaine base and handed it to Nurse with the expectation and understanding that he was going to sell it.

Regarding the firearm, mere presence as a passenger in a car from which the police recover contraband or weapons does not establish possession. See United States v. Blue, 957 F.2d 106, 108 (4th Cir. 1992). Testimony that the defendant removed something from the spot where the police later found the weapon can support a finding of possession, however. See United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983). In this instance, Frezer had dominion and control over the firearm, because she had control over and used the secret compartment and, in fact, she was alone in the car for a substantial period of time. See United States v. Bell, 954 F.2d 232, 235-36 (4th Cir. 1992), overruled on other grounds, United States v. Burgos, 94 F.3d 849 (4th Cir. 1996); United States v. Eldridge, 984 F.2d 943, 946 (8th Cir. 1993). In addition, Cunningham testified that once the secret compartment was opened, the firearm was in plain view. Accordingly, there was sufficient evidence to support Frezer's conviction.

VI.

Frezer also argues that she was entitled to a four-level reduction in her offense level for her minimal role in the offense under USSG § 3B1.2(a). At sentencing, the district court granted Frezer a two-level

9

reduction in her offense level for her minor role in the offense under USSG § 3B1.2(b), but denied her a further downward adjustment.

Section 3B1.2 enables a court to reduce a defendant's offense level by four levels if he or she was a minimal participant in criminal activity, by two levels if he or she was a minor participant in criminal activity, or by three levels if his or her participation was less than minor but more than minimal. A defendant must show by a preponderance of the evidence that he or she is entitled to the downward adjustment he or she seeks. United States v. Gordon, 895 F.2d 932, 935 (4th Cir. 1990). On appeal, we will not disturb a district court's finding as to a defendant's role in the offense unless that finding is clearly erroneous. Daughtrey, 874 F.2d at 218.

Frezer had dominion and control over approximately 311.93 grams of cocaine base, worth up to $9,000. She was directly involved in seeing that these drugs reached their intended buyer. In short, Frezer failed to show by a preponderance of the evidence that she was entitled to a downward adjustment of her sentence for minimal participation. See United States v. Garcia, 920 F.2d 153, 155-56 (2d Cir. 1990) (departure denied where defendant was entrusted with and delivered large amount of cocaine).

VII.

Nurse contends that the jury was improperly instructed after Wade pled guilty. According to Nurse, the district court informed the jury that Wade had been "removed" from the case, that the jury should not speculate on the reason, and that the jury should judge the guilt or innocence of the remaining defendants solely on the evidence.[6] Nurse asserts that the jury should have been informed that Wade pled guilty.

First, it is hard to imagine how disclosure of Wade's guilty plea could have aided Nurse. The testimony at trial showed that Wade and Nurse were together involved in drug dealing. Therefore, Wade's plea would tend to implicate Nurse. Next, any negative inference from the

_____

[6] The joint appendix does not include the instructions. Therefore, we have assumed, for purposes of argument, that Nurse correctly describes the instructions.

10

court's explanation regarding Wade was foreclosed by the court's clear instructions to the jurors that they should not speculate or consider the reason for Wade's removal. Therefore, we find no prejudice from the court's instructions. See United States v. Sockwell, 699 F.2d 213, 216 (5th Cir. 1983).

VIII.

Finally, Nurse asserts that the Government participated in a conspiracy designed to convince drug dealers to falsely testify at his trial. He seeks access to transcripts of the grand jury proceeding in order to support his contentions. Nurse's allegations are broad and conclusory. He presents no evidence of prosecutorial misconduct nor does he indicate specific facts that are allegedly supported by the transcript. Finally, Cunningham and Pendergrass' backgrounds were explored at trial, and the jury was well aware that they were both testifying under agreement with the Government. Because Nurse has not shown a specific need for the transcripts, we will not permit a "fishing expedition." Nurse's motion for production of transcripts is denied. See Fed. R. Crim. P. 6(e); see also Douglas Oil Co. v. Petrol Stops NW, 441 U.S. 211, 223 (1979) (disclosure appropriate only where need for transcripts outweighs public interest in secrecy).

IX.

Accordingly, for the reasons stated, we affirm Appellants' convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED